## ALABAMA AND VICKSBURG RAILWAY COMPANY *v.* MISSISSIPPI RAILROAD COMMISSION.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 97? Argued November 13, 14, 1906.—Decided December 17, 1906.

A State may insist upon equality of rates, and although a State may not compel a railroad company to do business at a loss, and even though the company may, against the power of the State, establish rates which afford reasonable 'compensation, if it voluntarily establishes local rates for some shippers—even though under the guise of a rebilling rate on interstate shipments—it cannot resist the power of the State to enforce the same rate for all shippers—or claim that the rate so fixed by the commission acting under authority of the State deprives it of its property without due process of law.

86 Mississippi, 667, affirmed.

On November 16, 1903, the Railroad Commission of Mississippi, by written order, directed the Alabama and Vicksburg Railway Company, hereinafter called the Vicksburg company, to put into effect, over its line of road from Vicksburg to Meridian, a flat rate of 3½ cents per 100 pounds on grain and grain products. December 3, 1903, an application was made by the railway company to the chancellor of the Fifth Chancery District of the State to restrain the enforcement of this order. July 11, 1904, a temporary injunction issued on the filing of the bill was dissolved and the bill dismissed. On appeal to the Supreme Court of the State this decree of the chancellor was affirmed (86 Mississippi, 667), and thereupon this writ of error was sued out.

*Mr. Harry H. Hall* for plaintiff in error:

The application for the flat rate of three and one-half cents was made, and its enforcement ordered, solely for the purpose of beating down the fair interstate grain tariff of the railroads operating between Meridian and St. Louis.

The acceptance, whether voluntary or involuntary, of a "rebilling" or "proportionate" interstate rate, is not the acceptance of the same rate as applied to local traffic; and, even though an unremunerative rate were voluntarily adopted by a carrier, such adoption would not justify its imposition by a railroad commission. *Wabash case,* 118 U. S. 557, 576; *Swift & Co.* v. *United States,* 196 U. S. 375.; *Import Rate case,* 162 U. S. 197; *Parsons* v. *Chicago & N. W. Ry. Co.,* 167 U. S. 447; *L. S. & M. S.* v. *Smith,* 173 U. S. 684–697; *M. & S. L. Ry. Co.* v. *Minn. R. R. Comm.,* 186 U. S. 268.

The rate of three and one-half cents is less than the actual cost of hauling. For a State, under pretense of regulating tariffs, to require a railroad company to carry freight at a loss, would be a taking of private property for public use without compensation and without due process of law. *Minneapolis &c. R. R. Co.* v. *Tompkins,* 176 U. S. 167; *Chicago &c. R. R. Co.* v. *Becker,* 35 Fed. Rep. 883; *Smyth* v. *Ames,* 169 U. S. 466; *Nor. Pac. R.* v. *Keyes,* 91 Fed. Rep. 47; *South Pac. R. Co.* v. *Railroad Com.,* 78 Fed. Rep. 236; *Metropolitan Trust Co.* v. *Houston &c. R. Co.,* 90 Fed. Rep. 683; *Cin. &c. R. Co.* v. *Dey,* 35 Fed. Rep. 866; *St. Louis &c. R. Co.* v. *Gill,* 156 U. S. 649; *Reagan* v. *Farmers Loan & Trust Co.,* 154 U. S. 362.

To enforce this flat rate of three and one-half cents would be denying to appellant the equal protection of the law. *Cotting* v. *Godard,* 183 U. S. 79; *L. & N. R. R. Co.* v. *McChord,* 103 Fed. Rep. 217.

The order of the Mississippi Railroad Commission directly interferes with interstate commerce. *G., C. & S. F. R. Co.* v. *Hefley,* 158 U. S. 98; *L. & N. R. R. Co.* v. *Eubank,* 184 U. S. 27; *Northern Pac. Ry. Co.* v. *Keyes,* 91 Fed. Rep. 47.

*Mr. Hannis Taylor* and *Mr. C. H. Alexander,* with whom *Mr. Monroe McClurg* was on the brief, for defendant in error:

A State has power to regulate traffic carried on within its limits, not strictly interstate. *Postal Telegraph-Cable Co.* v. *Charleston,* 153 U. S. 692. A railroad corporation largely en-

gaged in interstate commerce is-amenaoie to state regulation
and taxation as to any of its service which is wholly performed
within the State, and not as a part of interstate service.  *Penna.
R. R. Co.* v. *Knight*, 192 U. S. 21; *Pullman Co.* v. *Adams*, 189
U. S. 420; *Kehrer* v. *Stewart*, 197 U. S. 67.

The Supreme Court of Mississippi therefore decreed that the
business in question was really intrastate business, and that
the order in question made by the Railroad Commission of that
State related to a matter within its exclusive jurisdiction.
The decree of the lower court was confined to a single subject-
matter wholly within the control of the State of Mississippi
and not subject to any of the clauses of the Federal Constitu-
tion which the plaintiff in error has invoked.

Upon a writ of error this court has no right to review the
decision below, upon the ground that the finding was against
the evidence or the weight of the evidence.  Upon a writ of
error, this court cannot review a decision of a question of fact,
even where, by the local practice of the State, the law and the
facts are tried together by the judge without a jury.  *Dower*
v. *Richards*, 151 U. S. 658; *Egan* v. *Hart*, 165 U. S. 188; 6 Ency.
of Pl. & Pr. 996.

Even if the commerce in question was interstate, the order
of the Railroad Commission prohibiting a discrimination within
the State was not illegal.

Plaintiff has failed to overcome the burden which the law
puts upon it to establish the fact that the commerce in ques-
tion is not wholly intrastate.  Even if it were otherwise, even
if it were clear that the commerce in question was interstate,
the order in question which simply undertakes, not to impose
a burden, but to remove an unlawful discrimination, is not
illegal.  Brannon on the Fourteenth Amendment; *Railroad
Co.* v. *Fuller*, 17 Wall. 560; *Denver R. R.* v. *Atchison Co.*,
15 Fed. Rep. 650; *Providence Co.* v. *Providence*, 15 R. I. 303;
*Shipper* v. *Penna. R. R. Co.*, 47 Pa. St. 338; *West. Un. Tel.
Co.* v. *James*, 162 U. S. 650.

The proof in the record does not uphold the contention that

the order in question has had the effect of depriving plaintiff of its property without due process of law, or has deprived it of the equal protection of the law.

When a commission and the officers of a railroad company differ as to the unreasonableness of a rate and there is room for intelligent difference of opinion, the courts will not interfere but will leave it to the test of experience. 23 Am. & Eng. Ency. of Law, 657, citing 29 Florida, 617; 25 Florida, 310.

The presumption of reasonableness is not overcome except by proof of expenses and receipts during an adequate period. 76 Fed. Rep. 186.

Evidence that the rates are lower than that of other points or on other roads is not competent. Conditions may be different. *Interstate Com. Com.* v. *Nashville &c. R. R. Co.,* 120 Fed. Rep. 934.

The case must be a clear one to warrant interfering with rate fixed by the commission. *Chicago* v. *Tompkins, supra.*

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The facts in this case are few. The company made what it called a "rebilling rate" of $3\frac{1}{2}$ cents per 100 pounds on grain and grain products shipped from Vicksburg to Meridian, that rate, however, being applicable only in case of shipments over the Vicksburg, Shreveport & Pacific Railroad, hereinafter called the Shreveport road. Instead of being enforced as solely a rebilling rate, the Vicksburg merchant who received a carload of grain or grain products over the Shreveport road was permitted to either forward it over the plaintiff's road to Meridian, or at any time within ninety days in lieu thereof send a similar carload, no matter whence received, from Vicksburg to Meridian at the same rate. It was in consequence of this effort on the part of the plaintiff to favor shippers who brought grain to Vicksburg over the Shreveport road that the

Railroad Commission made the order declaring that all grain products shipped from Vicksburg to Meridian should be at the same rate, 3½ cents per 100 pounds. The order of the commission merely meant this: If a Vicksburg merchant who received a carload of grain over the Shreveport road was permitted by the railway company to ship over the Vicksburg road to Meridian any other carload at 3½ cents per 100 pounds, every other merchant in Vicksburg should be permitted to ship at the same rate, although he had had no dealings with the Shreveport company. It is unnecessary to inquire whether the order could be sustained if it appeared that the plaintiff received only 3½ cents as its share of a total rate on through shipments to Meridian from the Northwest by the Shreveport road; for here, under the guise of a rebilling rate, the Vicksburg merchant who dealt with this Western road was given a rate of 3½ per cent on any grain that he might see fit to ship to Meridian. While it may be true that a local railway's share of an interstate rate may not be a legitimate basis upon which a state railroad commission can establish and enforce a purely local rate, yet whenever, under the guise or pretense of a rebilling rate, some merchants are given a low local rate the commission is justified in making that rate the rate for all. It is not bound to inquire whether it furnishes adequate return to the railway company, for the State may insist upon equality, to be enforced under the same conditions against all who perform a public or quasi-public service. When voluntarily the Vicksburg company established a local rate of 3½ per cent from Vicksburg to Meridian for those who had within 90 days made a shipment over the Shreveport road, it estopped itself from complaining of an order making that rate applicable to all shipments, no matter whence they arose, and in favor of all merchants, whether those transporting over the Shreveport road or not.

We are not unaware of our decision in *Texas & Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 197, in which, on review of the Interstate Commerce Act, we held that

a mere inequality of rate was not always proof-of undue dis-crimination, but we were passing upon an act of Congress and seeking to ascertain its intent and scope. There was no intimation that it was not within the power of Congress to prescribe an absolute equality of rate. In the present case we are not construing an act of the State of Mississippi or passing upon the powers which by it are given to the state railroad commission. Those matters are settled by the decision of the Supreme Court of the State, and the question we have to consider is the power of the State to enforce an equality of local rates as between all parties shipping for the same distance over the same road. That a State has such power cannot be doubted, and it cannot be thwarted by any action of a railroad company which does not involve an actual interstate shipment, although done with a view of promoting the business interests of the company. Even if a State may not compel a railroad company to do business at a loss and conceding that a railroad company may insist, as against the power of the State, upon the right to establish such rates as will afford reasonable compensation for the services rendered, yet when it voluntarily establishes local rates for some shippers it cannot resist the power of the State to enforce the same rates for all. The State may insist upon equality as between all its citizens, and that equality cannot be defeated in respect to any local shipments by arrangements made with or to favor outside companies.

We see no error in the ruling of the Supreme Court of the State of Mississippi, and its judgment is

*Affirmed.*