## MAISON DORIN SOCIÉTÉ ANONYME v. ARNOLD et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

1. **Contracts ⬅267—In suit for rescission complainant should show observance of contract.**

    In case of a litigant seeking rescission of a contract, it should be found by a tribunal of equity as fulfilling its obligations under the contract, unless there be a clear breach thereof by the other party.

2. **Appeal and error ⬅954(1)—Order granting preliminary injunction reviewable only for abuse of discretion.**

    Review by an appellate court of an order granting a preliminary injunction is limited to an inquiry as to whether there was an abuse of discretion, and if it preserves the existing state of things until the rights of the parties can be fully investigated and determined on strictly legal proofs according to the course and principles of equity, it should not be disturbed.

3. **Injunction ⬅136(2)—Preliminary injunction against sale pending suit for rescission of contract held proper.**

    Where defendants had been the sole importers and distributors in the United States, under contracts, of complainant's products and in the course of some 40 years had built up an extensive trade in the same the granting of a preliminary injunction restraining complainant from selling such products in the United States through others, pending a suit by complainant for rescission of the contracts, *held* proper.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Maison Dorin Société Anonyme against John W. Arnold and Daniel H. Arnold, copartners as F. R. Arnold & Co. From an order granting defendants a preliminary injunction, complainant appeals. Affirmed.

The suit is for rescission of contract. The preliminary injunction restrained plaintiff from selling or distributing its merchandise, except through the defendants.

Coudert Bros., of New York City (Paul Fuller, Jr., Hugo Mock, and Asher Blum, all of New York City, of counsel), for appellant.

Armstrong, Keith & Kern (Lorenzo D. Armstrong, John S. Keith, and Joseph W. Murphy, all of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The court below granted an order on the appellees' application, restraining the appellant from selling or dis-

---

tributing its merchandise throughout the United States, except through the appellees, and from representing that the appellees were not the sole and exclusive agents of the appellant in the United States. In 1884 the appellant contracted with the appellees whereby the latter became the sole importers and distributors in the United States of the Dorin products, and this contractual relationship continued until the events hereinafter referred to. Prior to 1884, the Dorin products were little known in this country, but by the industry of the appellees a market was created and the products (toilet preparations and articles) were so popularized that the business grew from 42,700 francs a year to 2,750,000 francs in one year. The appellees greatly improved, by their suggestions, the products of the appellant. They sold under trade-marks which the appellees originated and in short made salable in the United States appellant's products by origination, selection, and inspection. In this way the appellees became recognized as the sole and exclusive representatives of the appellant here. In 1907 the appellees originated a new rouge, and likewise originated the trade-mark "Rouge Brunette," under which it was sold in the United States. For several years the appellant manufactured this article under this trade-mark solely for the appellees, and did not distribute or sell it elsewhere. This article is said to have become the most popular Dorin product in the United States, and was represented by one-half of its sales. For protection the appellant caused to be printed in red ink upon the label the appellee's personal trade-mark. Another popular article sold was "Rouge Framboise," which was pushed by the appellees through a very considerable advertising campaign.

On July 31, 1911, a contract was entered into which provided for the assignment of the trade-marks and for the continuation of the contract theretofore existing as long as Francis R., John W. and Daniel H. Arnold were connected with the firm of the appellees. This contract was entered into between the appellant and the Welles Trading Company, a Connecticut corporation, whose officers were the members of the appellees' firm, as was also the sole proprietor of the appellant. The reason for this substitution of the Connecticut corporation in the contract in place of the appellees was said to be solely a personal one between the parties, and it was the intent and purpose of all the parties that the appellees were intended to be the real parties in interest in the contract and the sole distributors of the Dorin products in the United States. After the execution of this agreement, the appellees advertised and otherwise represented themselves to be the sole distributors of the appellant's products in the United States, and all products were so imported and distributed. The Welles Trading Company never imported any products and never intended to import any Dorin products, and its sole and only interest in said products was to receive from the appellees 5 per cent. of the purchase price of all the goods so imported. This profit was distributed among the officers and stockholders by way of salaries and dividends. The Welles Trading Company dissolved in 1920 for reasons immaterial here, and a new company was incorporated under the laws of Delaware. This corporation took over all the assets and liabilities of the dissolving Connecticut corporation. Commissions were paid to it and dividends were declared.

In October, 1923, and prior to the filing of the answer and counterclaim in the present action (the Welles Trading Company is not a party to this action), and on October 18, 1923, the Delaware corporation was dissolved by a vote of the stockholders. The appellees succeeded to all the privileges and assumed all the liabilities of the Welles Trading Corporation under the contract of July 31, 1911, according to the terms of dissolution of the Delaware corporation. The appellees are therefore answerable to the obligations of the contract of July 31, 1911. The right of the appellees as the sole importers and distributors of the Dorin products in the United States was acknowledged by the appellant, and that seems to have been the intention, for the business was carried on during this period of years between the parties without interruption until just before the commencement of this suit. In 1920 some competitors began importing "Rouge Brunette" and "Rouge Framboise" into the trade in the United States which was not equal in quality, color, or comparison to that sold by the appellees, and at prices lower than the appellees' prices for the articles made and sold under the trade-mark used in the United States. Whereupon they demanded that the appellant assign them the trade-marks covering the articles thus imported, so that they might stop the importations and prevent the sale of the inferior articles. Negotiations looking toward this end resulted in a refusal by the appellant, unless the appellees agreed to a revision of the contract of July 31, 1911, and this the appellees declined. The appellant refused to fill orders which were given by the appellees, and in July, 1923, its representative came to the United States and made an arrangement with one Levy for the sale of its products in this country. He has been openly and notoriously selling the products which the appellees formerly sold.

This suit was brought by the appellant (1) for cancellation of the registration of a certain trade-mark "Dorind'or" registered by the appellees for compact powders and rouges in the United States Patent office; (2) cancellation of the registration by the appellees of the trade-mark "La Dorine" for powder puffs and powder pads registered by the appellees in the United States Patent Office; (3) an injunction enjoining the appellees from using "Dorind'or" and "La Dorine," except to designate the original and genuine Dorin products; and (4) a decree declaring that the contract of July 31, 1911, be rescinded, canceled, and terminated.

The answer denies the material allegations of the complaint, and in a counterclaim alleges that with the consent and approval of the appellant, and for its benefit, and without profits to themselves, they registered the trade-mark "La Dorine" for powder puffs and powder pads, to prevent the said trade-mark from being registered by outsiders, and that they sold and distributed, using this trade-mark solely in connection with the appellant's products after advertising the same, and that they had never used or applied "Dorind'or" to any articles other than the metal boxes containing Dorin rouges and powders, with the full knowledge and consent and approval of the appellant. They allege full performance of all the terms and conditions of the contract of July 31, 1911, and ask for a dismissal of the complaint, and for affirmative relief directing the appellant to assign to them the trade-marks, and en-

joining the appellants from selling their products, directly or indirectly, in the United States other than through their distribution. They estimate that by reason of the breach of the contract they are damaged in the sum of $3,000,000.

After issue was joined, the motion resulting in the order appealed from was made by the appellees. The order in effect keeps the parties in statu quo until final hearing. It was alleged that irreparable damage would be done the appellees if this status was not maintained. The right to the appellees' temporary injunction is challenged: (1) Because it is said that the appellees have been manufacturing powder puffs under the trade-mark "La Dorine," which were manufactured in the United States, and that such action on their part is a fraud and deception on the public, to the damage of the appellant, because the buying public in the United States would buy said pads under the impression that they were the products of the appellant; (2) that the appellees have been advertising and offering for sale certain bath crystals, bath soap, and bath dusting powder under the name of "Fracy," and that the similarity of this name to the registered trade-mark "Fraisia," under which Dorin sells one of its products, is such that the appellant has been and will be damaged by the appellees' acts; (3) that the appellees have sold gilt boxes labeled "Dorind'or," and that this is a fraud upon the public; (4) that the appellant never consented to the appellees registering the trade-marks "La Dorine" and "Dorind'or," or any other names, and that no one connected with the appellant knew that they had been so registered until August, 1923. What the appellees are charged with having done represents a course of business conduct which had been carried on for a great many years, and seems to have won the approval of and profit to the appellant heretofore. It is fitting that the parties should remain in statu quo until the truth or falsity of these claims are determined at final hearing.

[1] As a further reason, it is argued that the dissolution of the Welles Trading Company was not completed until eight days after the defendants' answer and counterclaim were interposed, and that it has interests under the contract of July 31, 1911, and that the appellees have no interest such as to maintain their claim pleaded in the answer. But the appellant did not make the Welles Trading Company a defendant. It was familiar with the organization and purposes of this corporation. In the case of a litigant seeking the rescission of a contract, it should be found before a tribunal of equity as fulfilling its obligations under the contract, unless there be a clear breach thereof by the other contractor. Selling through another, such as the distribution through Levy, together with the refusal to fill the orders of the appellees, are circumstances which might well indicate a desire on the part of the appellant to avoid its obligations under the contract.

[2] The granting or refusing of a preliminary injunction ordinarily rests in the sound discretion of a trial court. The review thereof by an appellate court is limited to an inquiry as to whether there is an abuse of discretion in granting the order, and it is based largely upon the consideration of the object and purposes of the preliminary injunction. If it preserves the existing state of things until the rights of the par-

ties can be safely and fully investigated and determined upon strictly legal proofs according to the course and principles of equity, such a determination should not be disturbed. Kings County Raisin & Fruit Co. v. U. S. Con. Seeded Raisin Co., 182 Fed. 59, 104 C. C. A. 499; Blount v. Société Anonyme du Filtre Chamberland Systeme Pasteur, 53 Fed. 98, 3 C. C. A. 455; Bothwell v. Fitzgerald, 219 Fed. 408, 135 C. C. A. 212. We regard the sole effect of this injunction is to keep the parties in statu quo, and, unless there is no equity in the claims of the appellees, it ought not to be disturbed. Coram v. Ingersoll, 133 Fed. 226, 66 C. C. A. 280.

[3] We are satisfied that irretrievable damage would result to the appellees to allow others to sell and distribute products of the appellant, and thus destroy the good will which has been in the making for some 40 years. Their work in originating new types of rouges and other toilet preparations, together with the aid of advertising, has created a good will and a market reputation which should not be wrecked prior to a trial, unless good cause be shown therefor. The appellees have offered to carry out, pending the trial, their obligation to buy and sell from the appellant as the contract provides, and it is fully established that it is well able to meet the obligations of payment.

The order is affirmed.