FEDERAL BROADCASTING SYSTEM, Inc., v. AMERICAN BROADCASTING CO., Inc., et al.

No. 119, Docket 20833.

Circuit Court of Appeals, Second Circuit.

April 8, 1948.

350

William L. McGovern and Seymour Krieger, both of Washington,. D. C. (Courtney, Krieger & Jorgensen, of Washington, D. C., and David Greenbaum, of New York City, of counsel), for Federal Broadcasting System, Inc., appellant.

Hawkins, Delafield & Wood, of New York City (Joseph A. McDonald, Clarence Fried and Franklin S. Wood, all of New York City, of counsel), for American Broadcasting Co., Inc., appellee.

Lauterstein, Spiller & Brown, of New York City (Leon Lauterstein and Jacob L. Isaacs, both of New York City, of counsel), for Mutual Broadcasting System, Inc., appellee.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the plaintiff from an order denying a .motion for a preliminary injunction. Such orders are largely within the discretion of the judge hearing the motion and we have no reason to suppose that he abused his discretion in the present case.

The plaintiff is the owner of radio broadcasting station WSAY at Rochester, New

York, and brought an action against the four chain broadcasting networks, National Broadcasting Company, Columbia Broadcasting System, Inc., Mutual Broadcasting System, and American Broadcasting Company, Inc., and two of their officers. It sought treble damages and a permanent injunction against all of them for violation of sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. It charged that by their concerted action these networks had unlawfully linked together all important broadcasting stations and national advertisers by a series of mutually exclusive contracts and had used their resulting powers to dictate arbitrarily the price at which all broadcasting facilities would be available, with the purpose and effect of excluding Station WSAY from the network advertising market. The plaintiff moved for a preliminary injunction against American and Mutual to prevent them from withdrawing their programs from its station pursuant to the above alleged conspiracy. This was in effect an application for a mandatory injunction pendente lite in order to compel American and Mutual to continue their existing relationships by providing plaintiff's station with programs. Judge Coxe, before whom the application for a preliminary injunction was heard, denied the motion, and granted an application by the Veterans Broadcasting Co., Inc., owner of Station WVET in Rochester, to intervene as a party defendant.

For some time prior to the present action all four networks furnished programs for the three broadcasting stations then existing in Rochester. NBC and CBS each had one of these stations as an exclusive affiliate; WSAY secured programs under special non-affiliate agreements with both American and Mutual. The arrangement with each of these two networks permitted the plaintiff to fix the price to be charged advertisers for the use of its facilities and gave the networks a fifteen per cent selling commission. The agreement with American network could be cancelled by either party on twenty-eight days notice. The one with Mutual was on an informal basis terminable at the will of either party. The two networks sought unsuccessfully to obtain a standard affiliation contract with the plaintiff on terms comparable to those they had with their other stations. Plaintiff refused these offers because they did not give to it the right to fix the rate to be charged an advertiser for the use of its station. The defendants contend that since WSAY was then the only available station in Rochester that was not bound to any network by an affiliation contract it could and did refuse any standard contract and instead demanded exorbitant rates for its facilities. In May and June 1947, the Federal Communications Commission granted licenses for two new stations in Rochester, WARC and WVET. Plaintiff still refused a standard contract with Mutual which was offered, demanding its stated station rate instead. Mutual then entered into an affiliation agreement with WVET, American entered into an affiliation agreement with WARC, and both cancelled their existing arrangements with the plaintiff.

■ In the record now before us there is no persuasive evidence of a conspiracy to boycott or otherwise unlawfully exclude the plaintiff from obtaining defendants' programs, whatever may later be established at a trial. The principal ground urged in support of the charge of a boycott as a basis for the temporary injunction is that by concerted action the American and Mutual networks have cancelled their existing arrangements with the plaintiff. However, each did this pursuant to the terms of its agreement, and it is clear that if these defendants really acted individually and not jointly they were within their rights. A network is not a common carrier and each therefore had the right in the absence of concerted action to make such contracts for the distribution of its programs as it chose. Plaintiff had no inherent right to set its own rate to an advertiser and in all other respects to use the facilities of the radio network, nor does the court have power to compel defendants to deal with the plaintiff on such terms. Plaintiff misconceives the function of a network, which buys time from the stations and sells to the advertisers its facilities and the services of those stations as an aggregate. Not only are the networks not common carriers, but it would be cumbersome if not impractical for them to furnish programs if they

352

did not have authority to deal independently with the advertising concerns instead of leaving the rates to be determined individually by the different stations which they serve. Such control by a network, operating as a single coordinating agency, would seem to be at least desirable in order that it might compete with other networks and advertising media and to assure a more reasonable distribution to every station of the income which the network as a whole may receive. We do not say that it would be impossible for a network to allow each station to set its own rate, but it would seem a less practical course of business and certainly one to which plaintiff can make no claim as of right.

 The claim is made that defendants acted jointly because they gave notice of termination of their agreements with plaintiff on the same day. However, these cancellations resulted because plaintiff was unwilling to enter into affiliation agreements as each defendant desired and had a right to require as a condition of its contracting to furnish programs. The simultaneous aspect of their notices is an insufficient basis for the charge of concerted action when it is remembered that American and Mutual were both in a position where time was of the essence in their competition with each other to put into operation as soon as possible their new affiliation contracts with WVET and WARC.

The further claim that certain business practices of the networks and terms of the affiliation agreements required by them as a condition for furnishing programs showed a conspiracy because of a general uniformity in form and practice is also unpersuasive. We cannot say that such similarity results from anything more than common business solutions to identical problems in a competitive industry, and the forms used may well merely indicate similar business practices or formulations such as we find in insurance policies, bills of lading, warehouse receipts and other commercial documents. Moreover, the similarity of many of the terms in these contracts might be explained by requirements of the Federal Communications Commission governing the stations.

We think it improper to grant a preliminary injunction upon the charge that the networks have unlawful "exclusive" contracts with their stations where the Federal Communications Commission, after protracted hearings and consideration not only of the general public interest but of the Sherman Anti-Trust Act, has specifically sanctioned many of the important terms of the affiliation contracts at present in use and the defendants have given reasonable grounds for denying their exclusiveness or illegality. See F.C.C. Report on Chain Broadcasting, Comm. Order No. 37, Docket No. 5061, May, 1941, p. 46; National Broadcasting Co. v. United States, 319 U.S. 190, 223, 63 S.Ct. 997, 87 L.Ed. 1344.

We cannot see any reason for requiring the defendants to maintain existing arrangements for providing programs for plaintiff when by the very terms of those agreements they might be cancelled and when a failure to recognize the cancellations as valid might jeopardize the new affiliation contracts made by these defendants with WVET and WARC.

For the foregoing reasons, the order denying a temporary injunction is affirmed.