**PACKAGED PROGRAMS, Inc.,**
Appellant,

v.

**WESTINGHOUSE BROADCASTING
COMPANY, Inc.**

No. 12454.

United States Court of Appeals
Third Circuit.

Argued March 31, 1958.

Decided May 28, 1958.

William Claney Smith, Pittsburgh, Pa., for appellant.

Paul J. Winschel, Pittsburgh, Pa. (J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District Judge.

HASTIE, Circuit Judge.

This is an appeal from an order dismissing a complaint for failure to state a claim upon which relief can be granted.

As presently alleged, these are the essential facts. At the times in question defendant Westinghouse owned and operated the only television station in Pittsburgh, and thereby enjoyed a lawful monopoly of the airwaves in certain parts of Pennsylvania, Ohio, and West Virginia. A related but distinct business was the production of programs on film for sale to advertisers for transmission over the defendant's television station. The defendant and the plaintiff were separately and competitively engaged in this business. The defendant attempted to monopolize program production by refusing in its television operation to consider the scheduling of filmed programs produced by the plaintiff, thereby causing plaintiff monetary loss. The issue to be resolved is whether the district court was correct in concluding that such allegations do not state a claim under the basic anti-trust laws, Section 1 or Section 2 of Title 15 of the United States Code Annotated.

The defendant first contends that this controversy is within the primary jurisdiction of the Federal Communications Commission, the administrative agency in charge of licensing radio and television broadcasters. But in the Federal Communications Act Congress considered and expressly saved civil anti-trust suits in this field, saying:

"All laws of the United States relating to unlawful restraints and monopolies and to combinations, contracts, or agreements in restraint of trade are hereby declared to be applicable * * * to interstate or foreign radio communications. Whenever in any suit, action, or proceeding, civil or criminal, brought under the provisions of any of said laws or in any proceedings brought to enforce or to review findings and orders of the Federal Trade Commission or other governmental agency in respect of any matters as to which said Commission or other governmental agency is by law authorized to act, any licensee shall be found guilty of the violation of the provisions of such laws or any of them, the court, in addition to the penalties imposed by said laws, may adjudge, order, and/or decree that the license of such licensee shall, as of the date the decree or judgment becomes finally effective or as of such other date as the said decree shall fix, be revoked and that all rights under such license shall thereupon cease: *Provided, however,* That such licensee shall have the same right of appeal or review as is provided by law in respect of other decrees and judgments of said court." 47 U.S.C.A. § 313.

And the courts have never doubted that civil actions for anti-trust violations by radio or television stations are cognizable and entitled to decision on their merits in the federal courts. See, e. g., McIntire v. Wm. Penn Broadcasting Co., 3 Cir., 1945, 151 F.2d 597, certiorari denied 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007; Federal Broadcasting System, Inc. v. American Broadcasting Co., 2 Cir., 1948, 167 F.2d 349, certiorari denied 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375; Massachusetts Universalist Convention v. Hildreth & Rogers Co., 1 Cir., 1950, 183 F.2d 497; cf. Regents of the Univ. System of Georgia v. Carroll, 1950, 338 U.S. 586, 70 S.Ct. 370, 94 L.Ed. 363. Beyond this, no issue now appears or is even suggested upon which a court would in likelihood have occasion to postpone adjudication pending enlightenment to be provided by an administrative decision. Indeed, the improbability of occasion arising for staying judicial action pending some administrative ruling was extremely great when the present complaint was dismissed because the Federal Communications Commission, different from numbers of other agencies, was not even au-

**710**

thorized to adjudicate claims in controversies of private parties.

The only controversy which has emerged so far in this case is whether Westinghouse has exercised judgment in bona fide determination whether programs are meritorious and in the public interest, or has used its power of selection among available programs arbitrarily as an instrumentality for eliminating a competitor in program production. In the unlikely event that some other question should arise later which should be held in abeyance pending an administrative decision, the normal discretionary power of the district court can then be invoked.

■ The only other point that requires discussion at this preliminary stage of the litigation is whether the admitted fact that Westinghouse enjoyed a lawful monopoly of telecasting refutes or negates the charge that its power as telecaster has been used to create monopoly in violation of the anti-trust laws. In numbers of situations the existence of lawful monopoly powers has failed to protect the monopolist in some related but additional restraint of trade. E. g. Lorain Journal Co. v. United States, 1951, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; United States v. Griffith, 1948, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236; Pennsylvania Water & Power Co. v. Consolidated Gas, Electric Light & Power Co., 4 Cir., 1950, 184 F.2d 552, certiorari denied 340 U.S. 906, 71 S.Ct. 282, 95 L.Ed. 655. In United States v. Griffith, supra, the Court made this observation: "A man with a monopoly of theatres in any one town commands the entrance for all films into that area. If he uses that strategic position to acquire exclusive privileges in a city where he has competitors, he is employing his monopoly power as a trade weapon against his competitors. * * * [This] is * * * a misuse of monopoly power under the Sherman Act. If monopoly power can be used to beget monopoly, the Act becomes a feeble instrument indeed." 334 U.S. at pages 107, 108, 68 S.Ct. at page 945. The point thus made as to a geographic ex-

pansion of monopoly of a single business applies with at least equal force to the presently alleged effort to monopolize a different, if related, business.

Of course, in the circumstances of the instant case, it may be difficult to prove the monopolistic design which has been alleged. But the plaintiff is entitled to try.

The judgment will be reversed and the cause remanded for such further proceedings as may be consistent with this opinion.